UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETHA KEO,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No. 1:21-cv-00807-KJM-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 21, 23)** |

I.      **Introduction**

Plaintiff Setha Keo seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.[1]

II.      **Factual and Procedural Background**

Plaintiff applied for benefits on May 6, 2019 alleging a disability onset date of May 28, 2018.  The Commissioner denied the applications initially on September 24, 2019, and on reconsideration on December 19, 2019.  AR 98, 106.  Plaintiff appeared for a hearing before an ALJ on January 5, 2021.  AR 31–68.  The ALJ issued an unfavorable decision on January 26, 2021.  AR 12–30.  The Appeals Council denied review on April 6, 2021 (AR 1–6) and this appeal followed.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 5, 12.

1

2

3

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).   Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is more than a scintilla, but less than a preponderance.   *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).   When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."   *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.   *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."   *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.   20 C.F.R. §§

416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 28, 2018.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: obstructive sleep apnea; central sleep apnea; post-traumatic stress disorder (PTSD); and depressive disorder.  AR 17.  The ALJ also found at step two that Plaintiff had the following non-severe impairments: allergic rhinitis; chronic sinusitis; hypertrophy of the nasal turbinates; history of unspecified shoulder and knee procedures; and asthma.  AR 17–18.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18–19.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: can understand, remember and carry out simple tasks consistent with unskilled work; can make simple decisions; can tolerate ordinary changes in

3

routine with normal breaks; can have occasional work-related interaction with co-workers, and no interaction with the general public; must avoid concentrated exposure to hazards such as heights and dangerous moving machinery.  AR 19–23.

At step four the ALJ found that Plaintiff could not perform his past relevant work as a van driver, children's institution attendant or transformer wirer, which were skilled or semi-skilled occupations.  AR 23.  At step five, in reliance on the Vocational Expert's testimony, the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: counter supply worker, order filler, and laundry worker.  AR 23–24.  The ALJ therefore concluded that Plaintiff was not disabled since the alleged onset date of May 28, 2018.  AR 24.

**V.     Issue Presented**

Plaintiff asserts three claims of error: 1- the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of plaintiff's limitations, and failed to offer legitimate reasons for rejecting plaintiff's subjective complaints; 2- the ALJ erred in failing to consider the underlying test results and objective findings associated with the VA ratings of disability; and 3- the ALJ erred in finding that Plaintiff could perform jobs exceeding his RFC.  MSJ at 1, Doc. 21.

**A.     Legal Standard**

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–

40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

5

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

**B.     Analysis**

**1.  Plaintiff's Subjective Complaints Concerning Sleepiness**

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting his subjective complaints concerning sleepiness, which was a primary symptom of his sleep apnea and a side effect of his psychotropic medications.  MSJ at 9.  Plaintiff contends that these symptoms, particularly in combination, resulted in excessive daytime sleepiness precluding him from sustaining full time work. *Id.*

Plaintiff initially focuses on the evidence concerning his medication side effects of sleepiness as he testified to at the hearing and reported to his clinicians, which he contends the ALJ ignored.  MSJ at 10 (citing AR 44, 269, 395).  However, the record shows that the ALJ did summarize Plaintiff's testimony in reasonable detail including his complaints of drowsiness and sleepiness, though not specifically noting that Plaintiff attributed his sleepiness in part to his

medication's side effects.  AR 20.   In advancing this argument further, Plaintiff contends that the ALJ "apparently failed to grasp that both medications that cause drowsiness and an underlying severe sleep disorder *would combine to have even greater impact then either on its own*."  *Id* (emphasis added).   But the record contains no statement to that effect from a medical professional, thus Plaintiff's assertion about the combined effects of psychotropics and sleep apnea is simply an assumption without evidentiary support.  Moreover, it is questionable whether Plaintiff could accurately attribute the sleepiness, even in part, to his psychotropics as opposed to sleep apnea or to poor <u>compliance</u> with sleep apnea treatment.   Further, as the ALJ noted, the treatment records reflect that Plaintiff self-discontinued his psychotropics as of July 2019 (AR 21 citing AR 548–51) which undermines the notion that psychotropic-induced sleepiness was an ongoing functional impediment throughout the relevant period as Plaintiff has suggested.  *See* MSJ at 9 (arguing that "medication side effects are an integral part of Plaintiff's inability to work").

In addition, the cause of Plaintiff's sleepiness, whether it be from medication side effects, sleep apnea, or both, would be less important than its impact on his mental faculties as reflected in his clinical presentation upon examination, which was fairly unremarkable.  More discussion on this issue will be addressed below in the VA Disability section.

Plaintiff also disputes the ALJ's reliance on the fact that his sleep disorder "was responsive to Bipap treatment" despite the fact that his Epworth Sleepiness Scale score only improved from 20 (the highest possible score, AR 410) to 15 (still indicative of moderate sleepiness, AR 664–65), and that Plaintiff continued to complain of sleep disturbance and excessive daytime sleepiness requiring naps.  Plaintiff explains that "in a disability determination 'improvement' only matters to the extent that it permits an individual to return to competitive work," and explains that "To be clear, the improvement subsequent to the BiPap therapy did not

resolve the sleepiness altogether."  MSJ at 10.  But Plaintiff's assertion here is not an accurate statement of law because it suggests that prior to the improvement in his Epworth score there was a presumption of disability that must be rebutted, which is not the case.  Further, the fact that Bipap therapy did not fully resolve his sleepiness does not establish that he would be precluded from performing the work described in the RFC.   Importantly, the RFC is not the most one can do while remaining symptom free; it is "the most you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Here, as the ALJ noted, Plaintiff's adherence to Bipap treatment was noted as poor in April 2019, and "very poor" in November 2019, which Plaintiff neither acknowledged nor disputes.   AR 20 (citing AR 436–37; AR 664–68).   An ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).   As the ALJ explained, Plaintiff's condition "has been responsive to BiPap treatment, despite issues over time with compliance."  AR 23.   Given that Plaintiff's Epworth Sleepiness Score improved from severe to moderate despite poor treatment compliance by Plaintiff, one would reasonably expect that Plaintiff would have experienced increased improvement had he been more compliant with treatment.

Finally, Plaintiff emphasizes that he testified very clearly that he was unable to continue his driving job due to falling asleep behind the wheel but the ALJ inexplicably omitted any driving restrictions from the RFC.  MSJ at 10.  This argument is moot as the ALJ found at step four that Plaintiff could not perform his past work as a van driver due to its skilled or semi-skilled nature, and with one minor exception,[2] the DOT descriptions of the jobs the VE identified at step five do not suggest that driving is a component of the duties of those jobs.  *See* DOT# 319.687-

---

[2] Under the DOT description for order filler (aka "laborer, stores," or "order detailer"), among many other job duties, it states that the employee "*May* drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment."  DOT# 922.687-058 (emphasis added).

010 (counter supply worker); DOT# 922.687-058 (order filler); DOT# 361.684-014 (laundry worker).  Thus, his inability to drive is not relevant to the step four and five findings.

In sum, Plaintiff identifies no error in the ALJ's analysis of the subjective or objective evidence concerning his daytime sleepiness.

### 2.  The VA Disability Rating

The parties agree that under the revised regulations an ALJ need not address a VA disability rating--or related disability determination from another non-SSA entity-- but must nevertheless address the underlying evidence upon which the disability rating was based.  *See* 20 C.F.R. § 404.1504; 20 C.F.R. § 404.1513(a)(1)-(4).  Here, Plaintiff contends the ALJ failed to do so and "merely stated that the VA uses 'different rules mean for determinations only within their own programs.'"  MSJ at 11 (quoting AR 23).  Defendant contends otherwise.

Although the source of the dispute is not immediately apparent, it is likely a function of an error the ALJ made in reciting the date of the VA evaluation in question:

> In June 2019, the claimant underwent an examination for the determination of Veteran's benefits. At that time, he reported a history of trauma and endorsed current symptoms of passive suicidal ideation, anxiety, and hypervigilance. At the time of examination he was noted to present with a dysphoric, anxious, and apprehensive affect.  However, he was oriented in all spheres, with organized thought processes and no evidence of gross cognitive impairment. His insight and judgment were characterized as within normal limits. (Exhibit 3F/77-88).

AR 20 to 21.

Though the date of June 2019 was referenced earlier in the cited exhibit, the date of this examination was in fact November 2, 2018, the same examination Plaintiff emphasizes was conducted by Dr. Marlin Griffin and gave rise to the 100% VA disability rating.  MSJ at 12 (citing AR 495-501).  The ALJ cited the same pages in the administrative record and accurately described the content of Dr. Griffin's examination.  *See* AR 21 (citing Ex. 3F at 77-88; AR 491–502).

Plaintiff describes the examination results as follows:

> Dr. Griffin *observed* Mr. Keo to be dysphoric, anxious and apprehensive with PTSD symptoms including recurrent distressing dreams, hypervigilance, marked physiological reactions to internal cues, avoidance of external situations, persistent negative emotions, markedly diminished interest in significant activities, feelings of detachment from others; that directly result in irritable behavior with angry outbursts and reduced Plaintiff's reliability and productivity.

MSJ at 12 (emphasis added).

Dysphoria, anxiousness and apprehension were indeed among Dr. Griffin's "observations," though the remaining observations as described by Plaintiff were in fact Plaintiff's self-reported symptoms and traumatic history. The ALJ reasonably captured those reported symptoms as quoted above when the ALJ noted that Plaintiff "reported a history of trauma and endorsed current symptoms of passive suicidal ideation, anxiety, and hypervigilance." AR 20. As to Dr. Griffin's objective observations, despite Plaintiff's allegation that the ALJ cherry picked from the record, the ALJ in fact discussed all of the mental status examination findings, normal and abnormal alike, whereas Plaintiff only discussed dysphoria, anxiousness and apprehension. As the ALJ explained and Plaintiff failed to acknowledge, Dr. Griffin also noted Plaintiff was oriented in all spheres with organized thought processes, no evidence of gross cognitive impairment, and insight and judgment within normal limits. AR 498.

Similarly, the ALJ described other mental health encounters from the VA as follows: **1-** in May 2020 he reported past trauma, PTSD symptoms, reckless behavior, hypervigilance, nightmares, variable moods, and difficulty sleeping, though he was noted to have a generally normal mental status with unimpaired memory, intact judgment and insight (AR 21, citing Ex. 13F/48-53); **2-** another May 2020 encounter noting he was oriented in all spheres, with a bright affect and stable mood. (AR 21, citing Ex. 13F/42); **3-** an August 2020 encounter noting he was pleasant with a bright affect and stable mood. (AR 21, citing Ex. 13F/19, 26-27); **4-** an October 2020 encounter noting he presented as stable with a normal range of affect, denied suicidal or

homicidal ideation, plan, or intent, he endorsed some sadness but said he generally feels neutral (AR 21, citing Ex. 13F/10);  and **5-** a November 2020 encounter noting dysphoric and restricted affect, denial or suicidal or homicidal ideations and hallucinations (AR 21, citing Ex. 13F/1-2, 8).

Although these mixed objective findings, mood abnormalities, in conjunction with Plaintiff's reported symptoms and traumatic history, apparently warranted a 100% VA disability rating, it does not follow that these findings necessarily mandate a disability finding here, nor a more restrictive RFC than what the ALJ assessed, namely: understand, remember and carry out tasks consistent with unskilled work, make simple decisions, tolerate ordinary changes in routine with normal breaks, have occasional work-related interaction with coworkers and no interaction with the general public.  The law is clear that when the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

In sum, Plaintiff identifies no error with respect to the ALJ's treatment of the VA disability rating or the underlying evidence upon which it was based.

### 3.      Dr. Stafford's Opinion As To Interaction with Supervisors

On September 10, 2019, Dr. Stafford conducted a consultative psychological examination of Plaintiff at the request of the agency.  AR 592–97.  Dr. Stafford opined, in relevant part, that "the claimant's ability to interact with co-workers, *supervisors*, and the public is moderately impaired due to increased arousal, anger, mood lability, difficulty being in social situations, and hypersensitivity."  AR 596 (emphasis added).  Plaintiff emphasizes that the ALJ found the opinion partially persuasive, including in regard to social limitations, yet only limited Plaintiff to occasional interaction with co-workers, no interaction with the public, but omitted a limitation concerning interaction with supervisors.

Plaintiff contends the error is not harmless because, "the VE also testified, when

questioned by the representative, that if an individual were unable to consistently interact appropriately with supervisors, competitive work was eliminated. Ar. 66-67." MSJ at 13. Importantly however, in the same response to the same hypothetical posed by counsel, the VE addressed not only that the inability to "consistently" interact appropriately with supervisors was work-preclusive, but also the inability to "consistently" interact appropriately with co-workers was also work-preclusive. AR 66–67. Yet one page earlier, in response to the hypothetical posed by the ALJ, the VE testified that a limitation to *occasional* co-worker interaction was *not* work preclusive and that an individual with that limitation could perform jobs in the national economy. In other words, in the VE's view, *occasional* co-worker interaction was a sufficiently "consistent" level of co-worker interaction so as not to preclude the identified jobs. From this it can be reasonably inferred that *occasional* supervisor interaction would also be a sufficiently "consistent" level of supervisor interaction so as not to preclude the identified jobs. Therefore, the omission of this limitation was not harmful.

**VI.   Recommendations**

For the reasons stated above, the recommendation is as follows:

1.   That Plaintiff's motion for summary judgment (Doc. 21) be **DENIED.**

2.   That Defendant's cross-motion (Doc. 23) be **GRANTED.**

3.   That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.   That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Setha Keo.

**VII.   Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may

file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __August 22, 2024__               _____ /s/ Gary S. Austin
                                                 UNITED STATES MAGISTRATE JUDGE